316 P.2d 243

**CITY OF ALBUQUERQUE, Plaintiff-Appellee,**

v.

**S. V. PATRICK, Defendant-Appellant.**

**No. 6193.**

Supreme Court of New Mexico.

Oct. 1, 1957.

228

Everett M. Grantham, Albuquerque, for appellant.

Frank Horan, Malcolm W. de Vesty, and Paul F. Henderson, Jr., Albuquerque, for appellee.

SADLER, Justice.

The defendant, as an appellant before this court, complains of a judgment of the district court of Bernalillo County at a trial de novo on appeal to that court from the police court of Albuquerque wherein he had been convicted of (1) driving while intoxicated; (2) resisting arrest; and (3) evading arrest.

The trial was before the court at the conclusion of which it found defendant guilty of driving while intoxicated and not guilty of the other two charges. The sentence was the imposition of a fine of $200, suspended by the court during the good behavior of defendant and unless shown to satisfaction of the court he had violated any law of the state of New Mexico or the City of Albuquerque, it was not to be placed in effect. When the court had imposed this sentence, the judge added:

"It will be suspended one year from today."

The disturbance out of which the commission of the offenses grew took place on the night of November 10, 1954. At some hour after midnight on the date mentioned an Albuquerque city policeman, Dave Timlin, while proceeding north on Rio Grande Boulevard observed two cars, one of which was pushing the other. He noticed that one of the cars did not seem to be properly handled, so he followed them until the rear car stopped and, accosting the driver, noticed a strong odor of alcohol on his breath. After some conversation, the driver, who proved to be the defendant, was taken to his home and advised to stay there.

Officer Timlin continued on his patrol and while later proceeding north on Second Street, his attention was attracted by the weaving from left to right of the headlights on a car following him. He stopped to observe the car, then trailed it until it stopped, passed it and stopped his own car. Having alighted from his car, he went back to the other car to investigate and, to his astonishment, the driver was Mr. Patrick, the defendant.

Accordingly, officer Timlin advised him he was under arrest for drunk and reckless driving and began assisting him to get out of his car. While so engaged he was assaulted by defendant and a scuffle between them took place. As soon as the officer could become disengaged from the scuffle, he hastened to his car to notify headquarters, whereupon the defendant bolted down a driveway and climbed up on a garage. Help arriving, the officer climbed onto the garage roof where a violent encounter took place between him and the defendant, during which a bottle of whiskey in one of defendant's coat pockets was broken.

The defendant suffered several cuts and lacerations about the face and head, had his dentures broken by blows from the officers, but was finally subdued. He first was taken to police headquarters, handcuffed, booked and a technician was called to give him a blood test. This he first had agreed to take but then refused.

After a stop-over at police headquarters of not more than 30 minutes, the defendant was found to be bleeding so badly from various wounds about the head and face and, the officers having been advised he was a "bleeder," they removed him to the County-Indian Hospital for examination and first aid. Upon arrival there he immediately asked to use the telephone to call his attorney and his doctor but was not allowed to do so because, at that time, it was the police department policy, later changed, that no person booked for intoxication could use the telephone for four hours. It later developed that defendant in addition to other injuries had a fracture of both the right and the left jaw.

It should be mentioned that the car being pushed by defendant's car, as mentioned above, was that of a city policeman named Hernandez, the engine of whose car had gone dead on him when defendant happened along and offered assistance. Counsel makes much of the fact that Hernandez was not called as a witness, though available, of course, to either party upon subpoena. At the conclusion of the trial the court found defendant guilty of driving while intoxicated and not guilty of the other two charges, viz., (1) resisting arrest and (2) evading arrest.

When both parties had rested the following colloquy took place between the court and counsel for the defendant, to-wit:

"Mr. Grantham: If the Court please, at the conclusion of all of the evidence, I want to make a motion to dismiss this case for the reason that the City has failed to prove by a preponderance of the evidence the charges contained in the complaint filed against the defendant. Second, that the evidence is clear and convincing that the defendant was deprived of his civil rights contrary to the provisions of

the Federal and State Constitutions. He was denied the right to obtain counsel, confer with counsel. He was denied his liberty without due process, no bail was fixed.

"The Court: Mr. Grantham, let me ask you, with reference to that later part of your motion, what does it matter. It might matter in an action for damages, or it might matter in a habeas corpus proceeding, but for the offense of driving under the influence of liquor, what does the fact that he was not advised by counsel after the offense have to do with the guilt or innocence of the charge?

"Mr. Grantham: It has to do with his being deprived of his right of due process to be treated as any person who is charged with a crime, is entitled to be treated. When he was arrested they also deprived him of the right to have his witnesses or independent witnesses observe his condition. In other words, if a man is taken into custody by the Police Department and is not permitted to have his lawyer, his doctor or a friend or or anybody else to observe and testify as to what his condition was, then I think he has been deprived of the rights that have been guaranteed to him by the Constitution. I might say, there is no question but what the rule existed in the City, it no longer exists, but the rule existed that they would not permit a man to use a telephone to call anyone for four hours after he was picked up.

"The Court: But the Court's inquiry is this. That as far as proof of guilt or lack of proof of guilt to show innocence, what does any subsequent violation of his civil rights have to do.

"Mr. Grantham: It has deprived him of the right to have witnesses of his own.

"The Court: In the absence of showing of prejudice?

"Mr. Grantham: He has a right to have his witnesses observe him and testify before this Court.

"The Court: The motion will be denied. Is there anything further, gentlemen?

"Mr. Horan: If the Court please, we would waive arguments, except I should like the opportunity for rebuttal in case counsel makes arguments. Would the Court like to see the ordinances, incidentally?

"The Court: Yes, I would.

"(Reporter's Note: Whereupon the Court was handed copies of the ordinances, after which he heard arguments of counsel and after which he handed down his decision as follows:)

"The Court: The Court, in announcing its decision wants to point out to counsel, the Court also has spent a good part of his time representing those unfortunate officials. Stand up, Mr. Patrick.

"(Reporter's Note: The Defendant stands.)

"The Court: The Court is going to find you guilty, Mr. Patrick, of the charge of driving while under the influence of liquor. I am going to also find you not guilty of the other two charges. The Court might say this. I am convinced from the testimony here beyond any reasonable doubt at all, that you were drinking, under the influence of liquor, and I am just as convinced, and the reason I am finding you not guilty of the other charges is that I think this officer went too far, and that is the reason you will be found not guilty of the other charges. I think you have been punished pretty much, in any event, having found you guilty, you will be fined the sum of Two Hundred Dollars as you were fined by the Police Magistrate, and that fine will be suspended conditioned on your good behavior and unless it is shown to the satisfaction of this Court that you have violated any law of the State of New Mexico or the City of Albuquerque it shall not be placed in force and effect.

It will be suspended for a period of one year from today. That will be all."

Counsel for the defendant (appellant) presents his case under two points, No. I being that he was denied due process and equal protection of the laws contrary to the provisions of Art. II, § 18, of the State Constitution and Section 1 of the 14th Amendment to the federal constitution. Point No. II rests on a claim that the evidence is not sufficient to support a finding that defendant was driving while intoxicated.

We may as well dispose of the points presented in reverse order. There can be no question but that the evidence conflicts on the issue of defendant's intoxication. Dr. O. A. Nesbit who first attended defendant upon his arrival at the County-Indian Hospital, among other things, testified:

"Q. State, Doctor if you discovered at the time of your examination anything which in your opinion indicated that Mr. Patrick was under the influence of intoxicating liquor? A. As I recall, I didn't hardly think he was.

"Q. That is your recollection of it now? A. Yes, sir.

"Q. Have you examined your record? A. Yes, sir.

"Q. To refresh your recollection? A. Yes, sir.

232

"Q. Was there any notation made on your records concerning whether or not he was intoxicated? A. No, sir.

"Q. I wish you would state to the Court what the result of your examination disclosed? A. Upon the patient bleeding from the mouth and from the scalp, he had a laceration of the scalp about two inches in length above the left ear, he had a small mucous laceration of the lower lip, he had a slight deformity of the left jaw, and made my provisional diagnosis, laceration of the scalp and lip and fracture of the left jaw."

Defendant's daughter, although admitting he had two or three drinks before dinner, says, in her opinion, he was not drunk. There was abundant evidence, however, from the officers that he was intoxicated. The trial judge was so well satisfied from the testimony of defendant's intoxication while driving that he felt called upon, in passing upon the motion to dismiss made by his counsel to comment:

"I am convinced beyond any reasonable doubt at all, that you were drinking, under the influence of liquor, and I am just as convinced, and the reason I am finding you not guilty of the other charges is that I think this officer went too far, and that is the reason you will be found not guilty of the other charges."

Coming next to the claim that defendant's constitutional rights were invaded and denied, we are compelled to agree with the trial judge that the decisive issue before the court was whether the defendant was guilty of driving while intoxicated.

 Having been found guilty of that charge and the evidence, though conflicting, supporting the finding, we might well close the opinion but for the claim by defendant that he was prejudiced at the trial in a denial of due process and equal protection of the laws contrary to Art. II, § 18, of the State constitution and section 1 of the 14th Amendment to the Constitution of the United States. Counsel for defendant rests his claim of a denial of constitutional rights mainly (1) on the refusal of the city police to permit him to contact his own attorney forthwith following booking, by reason of a regulation then in effect, but later dropped, that they would not permit a prisoner arrested for intoxication to consult an attorney for four hours after arrest; and (2) that he was entitled to be treated for his wounds by his own doctor.

Whether the first regulation postponing for four hours contact with an attorney was to give the drunks time to sober up, we need not consider since the regulation has long since been eliminated. We see no prejudice in any event, to defendant in its application to him. Within thirty minutes after reaching police headquarters he

was under the care of a physician at County-Indian Hospital and apparently was well cared for as indicated by his ability to attend his trial and testify intelligently. The officers may have used more force than necessary to effect defendant's arrest. The trial judge intimated he harbored such a thought.

"* * * Even a sheriff, or his legally appointed deputy, has no right to make an unjustifiable assault, and one which is not warranted, upon any one whom he proposes to arrest. He must use no more force than the nature of the case warrants, and if he exceeds such limits, then he may be liable for damages in a civil suit. * * *" Territory v. Taylor, 11 N.M. 588, 601, 71 P. 489, 493.

This feeling on the part of the trial judge very likely brought about an acquittal for defendant of the more serious charges against him as language of the judge plainly indicates. We fail to see, however, any denial to defendant at the trial of a constitutional right in any respect claimed, or that can be fairly imagined.

Finding no error, the judgment of the trial court will be affirmed.

It is so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

KIKER, J., not participating.